Milligan, J.,
delivered the opinion of the court:
This is an action brought under the “Abandoned and, captured property acts,” to recover the net proceeds of 178 bales of cotton, alleged to. have been seized on the plantation near Lake Providence, in Louisiana.
*695 The action was originally brought in the name of Warren M. Benton, and his wife, Mrs. Benton, and shortly before the .argument of the cause, the claimants, by their attorney, moved the court to strike out the name of Mrs Benton, which motion, together with the cause on its merits, was submitted to the court for decision on the hearing.
Under the rules of strict technical pleading, it is quite clear that this motion could not be allowed at this stage of the proceedings; but this court has found it impossible to adhere -strictly to the rules of technical pleading; and in almost every instance, in which the real merits of the case could be reached, and the pleadings were certain to a common intent, and reasonably free from obscurity and ambiguity, we have held the pleadings good, and proceeded with the case to final judgment.
In this case it is obvious the joinder of the wife was unnecessary, and added nothing to the right of the claimants to recover, on the one hand, or to the strength of the defence, on the other. The claimants were residents of the State of Kentucky, and the cause of action arose in Louisiana; but it is not shown that the wife’s interest is in any way involved in this action.
It is true the peculiar laws of Louisiana are relied on to show her interest, and the necessity of her joinder in the action. But there is no force in this argument. The domicile of the claimant is in Kentucky, and the action for personalty; and in all cases of movable or personal property, the law both in this country and in England is well settled, that the property is presumed to follow the person. The lex domicilii, and not the lex loci rei sitw, as in cases of real or immovable property, governs. Story’s Confl. Laws, §§ 467, 469; Steinley v. Barns, 3 Hagg., Eccl. R., 373; Vattel’s Law of Nations, B 2, ch. 8, § 110, 111; 4 Kent’s Comm., 513; 1 German on Wills, 2 to 6, and notes.
In the sense of the “Abandoned and captured property acts,v the husband is the lawful owner of the proceeds of the cotton claimed in this action, and the suit ought to have been brought in his name. The objections to allowing the motion are merely technical and do not go to the merits of the action, and therefore we allow the rule, and proceed with the consideration of the cause on its merits, in the name of the husband alone.
This preliminary question out of the way, the court find the .facts to be—
1. The domicile of the claimant was in Kentucky, where his *696 wife and family are shown to have resided during the war.. Mrs. Benton appears to liave visited Louisiana once, early in tbe spring of 1861, but she shortly thereafter returned to her plantation in Kentucky, where she remained with her family throughout the entire war.
2.. The claimant owned several plantations in Louisiana, near-Lake Providence, and a number of slaves, who were engaged under his supervision in the cultivation of cotton. He spent a large portion of his time on his plantation, and only occasionally during the war visited his home and family in Kentucky.
3. After the occupation of that portion of Louisiana where his plantations were located by the United States military forces, he appears to have visited his family in Kentucky, under a pass granted by the Federal authorities.
4. A portion of the cotton raised ■ by him in Louisiana is shown to have been burned in the early part of the war by the rebel authorities; and in March or April, 1863, 171 bales of cotton, 96 of which were raised by his hands on the Lake Providence plantation, and 75 on the Woodstock place, under orders of General McPherson, were seized by the chief quartermaster of the Seventeenth Army Corps, and shipped to Captain Eddy, at Memphis, Tennessee, and there sold, and the proceeds paid into the Treasury of the United States.
5. It satisfactorily appears that the claimant gave no aid Or comfort to the rebellion during the war. Both he and his wife are shown to have opposed secession, and he continued throughout the war, both in Kentucky and Louisiana, to speak and act against the rebellion. He dissuaded his relatives from joining the rebel army, and gave valuable information to the United States military officers in Louisiana, and suffered in his property at the hands of the rebels.
Oh these facts we think it clear that claimant is entitled to recover the proceeds of his cotton in the Treasury.
The fact that his legal domicile was in Kentucky, and his plantations and slaves in Louisiana, where he spent most of his time during the war, in the light of all the circumstances of this-case, raises but a slight presumption of disloyalty against him. The war found his planting interests fixed in Louisiana, where, prior to its inauguration, he had invested his capital and employed his hands. He was not compelled, we think, under the-liberal interpretation we are bound to give the captured and *697 abaadoned property acts, under the receat decisions of the Supreme Court, to abandon all his interests in Louisiana,' and leave his slaves and property to the mercy of an infatuated party, that stood opposed to his own political views. The dictates of common humanity, as well as private interest, required his care and attention over his slaves and other property there.' He went there, to give his oversight to his interest, before the actual breaking out of the war or the passage of any act of Congress or proclamation of the President inhibiting inter - . course between the two sections, and never, at any time thereafter, violated or attempted to violate the. non-intercourse acts. The cotton claimed was raised on rebel soil and there seized, and we think, in the light of these facts and circumstances, but little, if any, presumption of disloyalty, on this account, arises against him.
But, in any light it can be viewed, the presumption of disloyalty is fully rebutted by the acts and conduct of the claimant during the war. He consistently adhered to the Union, whether at home in Kentucky or on his plantations in Louisiana, and gave no aid or comfort to the rebellion.
We therefore hold him entitled to recover the net proceeds of 171 bales of cotton, which amounts to the sum of $36,965 07, for which judgment will be entered.